**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MIGUEL MENDOZA,

                          Plaintiff,

      - v -                                        Civ. No. 9:09-CV-466
                                                     (LEK/RFT)

DEBORAH G. SCHULT, *Warden, FCI Ray Brook*;
D. MARINI, *M.D., Clinical Director, FCI Ray Brook*;
LIBERTY, P.A., *Physician's Assistant, FCI Ray Brook*;
UNITED STATES, *a/k/a Henry J. Sadowski*,[1]

                          Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

MIGUEL MENDOZA
14511-045
Plaintiff, *Pro Se*
Gilmer FCI
P.O. Box 6000, Inmate Mail/Parcels
Glenville, WV 26351

HON. RICHARD S. HARTUNIAN              CHARLES E. ROBERTS
United States Attorney                        Assistant United States Attorney
for the Northern District of New York
Attorney for the Defendants
100 South Clinton Street
P.O. Box 7198
Syracuse, NY 13261-7198

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

    *Pro se* Plaintiff Miguel Mendoza commenced this civil rights action alleging that the Defendants were deliberately indifferent to Plaintiff's serious medical needs and negligently

---

[1] By order of the Honorable Lawrence E. Kahn, Senior United States District Judge, Henry J. Sadowski is not a recognized Defendant in this action. *See infra* Part I.A.

dispensed incorrect medication to Plaintiff. Defendants now bring a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 (Dkt. No. 53), which Plaintiff opposes (Dkt. No. 66). For the reasons that follow, it is recommended that Defendants' Motion for Summary Judgment be **granted**.

## I. BACKGROUND

### A. Procedural Background

Plaintiff commenced this action on or around April 20, 2009, by submitting a Complaint pursuant to 42 U.S.C. § 1983. Dkt. No. 1. By Order dated June 4, 2009, the Honorable Lawrence E. Kahn, Senior United States District Judge, reading Plaintiff's *pro se* filing in a light most favorable to the Plaintiff, interpreted Plaintiff's constitutional claims as brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Dkt. No. 5.[2] Judge Kahn also afforded Plaintiff the opportunity to have his corresponding tort claims treated under the Federal Tort Claims Act ("FTCA"), provided Plaintiff demonstrate that the claims were timely filed and fully exhausted. *See id.*[3]

In response to the June Order, Plaintiff submitted an Amended Complaint, adding Schult as

---

[2] *Bivens* actions, although not precisely parallel, are analogous to actions brought pursuant to 42 U.S.C. § 1983 against state actors, and the constitutional standard of review is the same for both. *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).

[3] Plaintiff brought tort claims based on two separate incidents: his March 2, 2007 claim regarding his slip and fall on ice, and his April 3, 2008 claim regarding his receipt of the wrong medication. Upon review, Judge Kahn found that Plaintiff's March 2, 2007 claim was not timely under the FTCA and dismissed the claim in its entirety. *See* Dkt. No. 5 at pp. 5-6 ("While it appears that Plaintiff presented his claim to the Bureau of Prisons ('BOP') within two years of the date of the incident (March 2, 2007), it does not appear that Plaintiff commenced this action 'within six months after the date of . . . notice of final denial of the claim by the agency to which it was presented.'") (quoting 28 U.S.C. § 2401(b)). Judge Kahn noticed that, included within the exhibits Plaintiff submitted in support of his Complaint, was a letter from Henry J. Sadowski, BOP Regional Counsel, dated November 21, 2007, denying Plaintiff's FTCA claim and formally advising him of his right to commence suit on his claim in federal court within six months. *Id.* Accordingly, Plaintiff was required to bring this claim no later than May 21, 2008, and because he did not file his initial Complaint until April 2009, Plaintiff's FTCA claim arising from the March 2, 2007 incident is time-barred. Plaintiff's April 3, 2008 claim was subject to Plaintiff informing the court if or when the claim was properly exhausted. *See id.* at pp. 6-7.

a Defendant to his claims of deliberate indifference to his serious medical needs. Dkt. No. 6. It was unclear though whether Plaintiff intended to pursue an FTCA action with respect to the alleged negligent dispensing of medication to him on April 3, 2008. By Decision and Order dated August 26, 2009, Judge Kahn found that any FTCA claim regarding the April 3, 2008 incident was prematurely filed such that the Court lacked subject matter jurisdiction over the claim.[4] Dkt. No. 9.

Plaintiff then submitted a Second Amended Complaint. Dkt. No. 11. "While not a model of clarity," Judge Kahn found that the pleading adequately set forth an FTCA claim with respect to the April 3, 2008 alleged incident. Dkt. No. 15, Order, dated December 10, 2009, at p. 3. Plaintiff, however, named "[f]or the United States Government, Mr. Henry J. Sadowski" as the Defendant for his FTCA claim. Second Am. Compl. at p. 2. As Plaintiff was previously instructed by the June Order, an FTCA claim may only be brought against the United States; accordingly, Judge Kahn substituted the United States in place of Henry J. Sadowski as the sole Defendant to Plaintiff's FTCA claim. Dkt. No. 15 at p. 3.

### B. Plaintiff's Claims

On March 3, 2007, Plaintiff, who at that time was incarcerated at FCI Ray Brook, reported to medical staff that he slipped and fell on ice the previous day, injuring his back. Dkt. No. 53-3, Defs.' Statement of Material Facts [hereinafter "Defs.' Statement"], at ¶ 2. In response, Plaintiff claims that Defendants G. Schult, D. Marini, and S. Liberty denied Plaintiff adequate medical care in deliberate indifference to his serious medical needs and in violation of his constitutional rights.

---

[4] Judge Kahn observed that Plaintiff's April 3, 2008 FTCA claim was not denied by the Federal Bureau of Prisons until July 27, 2009, which was almost a month after June 29, 2009 – the date Plaintiff filed his Amended Complaint. *See* Dkt. No. 9 at pp. 2-3.

Second Am. Compl. at p. 4.[5]  Specifically, Plaintiff avers that between March 5 and April 1, 2007, he requested treatment for his back pain but was only given ineffective over-the-counter medication. *Id.* at p. 13.  He also claims he should have been given an MRI but was not. *Id.* at p. 14.  Finally, Plaintiff claims that on April 3, 2008, he was "given the wrong medication at pill line" and suffered serious side effects.  *Id.* at pp. 8 & 15.  Throughout his Second Amended Complaint and his Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff describes the side effects as both an allergic reaction and a heart attack.  *See id.* at pp. 5-6 & Dkt. No. 66, Pl.'s Opp., at pp. 2-3.  Defendants submit evidence to the effect that Plaintiff was in fact not given incorrect medication and that on April 3, 2008, he suffered an anxiety or panic attack, not a heart attack nor an allergic reaction to his medication.  Defs.' Statement at ¶¶ 9-11.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it

---

[5] Attached to Plaintiff's *pro forma* Complaint are unnumbered, handwritten pages where Plaintiff continues detailing his factual allegations.  For ease of reference, this Court will identify Plaintiff's Second Amended Complaint's page numbers as those assigned by the Court's case management electronic filing system.

contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the

strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Plaintiff's *Bivens* Claim

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized the existence of a cognizable claim in certain instances for alleged constitutional violations committed by federal agents. *See Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981) (noting that a *Bivens* action is a judicially-created remedy); *see also Carlson v. Green*, 446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities. *See Polanco v. United States Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998) (cited in *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007)). Thus, *Bivens* claims are applicable to constitutional deprivations by defendants acting under the color of federal law. *Soichet v. Toracinta*, 1995 WL 489434, at *3 (S.D.N.Y. Aug. 16, 1995). In general, case law under 42 U.S.C. § 1983 applies to *Bivens* cases. *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (quoting *Ellis v. Blum*, 643 F.2d at 84).

Plaintiff alleges that after he slipped and fell on ice on March 2, 2007, he requested treatment for the "excruciating pain in his lower back and buttocks" but Defendants failed to adequately address his medical needs. Second Am. Compl. at pp. 11-14. To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with

"deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994). Under the objective prong, the alleged medical need must be "sufficiently serious." *Id.*; *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d at 702 (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). Under the subjective component, the plaintiff must demonstrate that the defendant acted with "a sufficiently culpable state of mind." *Hathaway I*, 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991).

Here, Plaintiff proffers that between March 5, 2007 and April 1, 2007, he "reported to medical several times requesting treatment from the pain that he was suffering from. [Plaintiff] was only provided with over the counter medication . . . until the medical department provided [Plaintiff] with amitriptyline 25 mg. tab and indomethacin 25 mg. caps." Second Am. Compl. at p. 13.

Plaintiff also states that "[a]t some point around June 27, 2007, [he] receive[d] an x ray from the medical staff," but he should have received an M.R.I. *Id.* at p. 14. Defendants do not controvert these facts, but add specific details of the treatment provided.[6]

Read liberally, Plaintiff seems to claim that he wasn't prescribed effective medication or medical services to counteract his back injuries. Plaintiff's evidence indicates a chronic back injury and is sufficient to find that he suffered from a serious medical condition. *See*, *e.g.*, *Dobbin v. Artuz*, 143 F. Supp. 2d 292, 302 (S.D.N.Y. 2001) (noting that an inmate's chronic back injury satisfies the objective prong of a deliberate indifference claim). There exists, however, no evidence that Defendants acted with the requisite culpable state of mind to find that they were deliberately indifferent to Plaintiff's serious medical needs. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer*). Rather then indicating that Defendants Schult, Marini, and Liberty failed to provide medical services with the requisite wanton state of mind, the record before us now undeniably leads to the opposite conclusion.

The Defendants provided the following medical care to Plaintiff: he was given treatment on both March 3, 2007, the day he reported to medical staff that he had slipped and fallen on ice the previous day, and on March 6, 2007, wherefore Plaintiff was prescribed Motrin, an extra pillow, rest

---

[6] Defendants note, however, that the x-rays of Plaintiff's "lumbosacral spine, sacrum, and coccyx" were actually taken on March 6, 2007, and read by a radiologist on March 21, 2007, who found no fractures but did find a "narrowing of the L4-L5 disc space, which is indicative of a chronic condition." *See* Dkt. No. 53-4, Dawn Marini, M.D. Decl., dated Nov. 2, 2010, at ¶ 10.

and convalescent status, and restricted from lifting, bending, or participating in sports. Defs.' Statement at ¶¶ 2-4. Defendants note that Plaintiff has had a "history of back pain which predates his alleged slip and fall by at least five years," and that "[b]ack pain is often a chronic condition, not susceptible to a one-time cure." *See* Dkt. No. 53-4, Dawn Marini, M.D. Decl., dated Nov. 4, 2010, at ¶¶ 7-8 (noting that Plaintiff's medical records show that he reported a history of recurrent back pain on July 31, 2002, while at FCC Oakdale). From March to October 2007, Plaintiff made several visits to medical staff and Defendant Marini complaining of back pain and was prescribed non-steroidal anti-inflammatory drugs such as ibuprofen and Indocine,[7] cutaneous anesthetic patches of Lidocaine 5%, amitrityline,[8] ranitidine,[9] a slip for a lower bunk, and more x-rays. Defs.' Statement at ¶¶ 6-8. Nowhere in Plaintiff's Response does he deny these facts, but instead describes how both Defendants Marini and Liberty prescribed him indomethacin but that "[P]laintiff stopped . . . taking the medication because it was too strong for his system. Wherefore the [P]laintiff was prescribed ibuprofen." *See* Second Am. Compl.; *see also* Pl.'s Opp. at p. 2.

Clearly, there exists no evidence that Defendants were indifferent to Plaintiff's medical needs. Rather than ignoring Plaintiff's plight, Defendants Marini and Liberty treated Plaintiff for lower back pain on March 3, 6, 22, 29, April 13, 21, May 17, August 14, and October 16, 2007, where he was given the treatment outlined above. Dkt. No. 53-5, Pl.'s Med. Records, at pp. 6-7 & 12-14; *see also* Defs.' Statement at ¶¶ 12-19. It is also evident that Plaintiff refused to comply with

---

[7] Indocin is one of the trade names of the anti-inflammatory drug indomethacin, also known as indometacin. *See* AMERICAN HERITAGE MEDICAL DICTIONARY 405 (rev. ed. 2007).

[8] Amitriptyline is "a tricyclic anti-depressant which is used for depression, anxiety and chronic pain. It is particularly helpful in treating patients with low back pain." *See* Marini Decl. at ¶ 11.

[9] Ranitidine inhibits gastric acid secretion and is used to prevent or treat duodenal ulcers. *See* AMERICAN HERITAGE MEDICAL DICTIONARY 696 (rev. ed. 2007); Marini Decl. at ¶ 16.

the treatment his attending medical physicians prescribed. Marini Decl. at ¶¶ 22-29. Plaintiff visited the Health Services Administrator, Evelyn Miller, on April 10, 2008, complaining that the medical service unit "is not doing anything for him and is all political response to him." Defs.' Statement at ¶ 28. Miller noted that Plaintiff "[w]ould not sit straight up [with] good posture but rather was slouched in chair," and that Plaintiff "admittedly has not done" the back strengthening stretches and exercises which the medical staff prescribed at "each visit." *See* Dkt. No. 53-6, Pl.'s Med. Records at p. 30 (emphasis in original); *see also* Dkt. No. 53-5, Pl.'s Med. Records at p. 14 (Defendant Marini's treatment notes of Plaintiff, which state that "[p]atient educated on above plan and on proper body mechanics/stretching exercises for low back as directed – he verbalized understanding."). Plaintiff also continuously refused to take prescribed pain medication for his back, or to participate in orthopedic clinics,[10] as Defendant Marini directed. *See* Dkt. No. 53-6, Pl.'s Med. Records at pp. 31-33. In summary, the record before the Court shows a lengthy history of noncompliance with treatment.

Plaintiff, who apparently disagreed with the clinical judgment of the medical staff, effectively took his treatment regimen into his own hands by unilaterally opting to discontinue the prescribed recommendations of health services. A prisoner who declines medical treatment cannot turn around and sue the medical professional for deliberate indifference whose judgment the prisoner has questioned and even defied. *Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986) (affirming lower court ruling that a prisoner who declines medical treatment cannot establish an Eighth Amendment claim for medical deliberate indifference); *Hardy v. Diaz*, 2010 WL 1633379, at *6 n.

---

[10] Marini states that Plaintiff's refusal to participate in the orthopedic clinic, "specifically designed for problems such as chronic back pain, effectively deprived him of counseling, physical examinations and information that was essential in helping him to reduce his back pain and treat his chronic condition." Marini Decl. at ¶ 26.

12 (N.D.N.Y. Mar. 30, 2010) (noting that skipping medical appointments and failing to comply with treatment directions can undermine an Eighth Amendment medical indifference claim); *Guarneri v. Hazzard*, 2010 WL 1064330, at *13 (N.D.N.Y. Mar. 22, 2010) ("Plaintiff's history of refusing to comply with the directions of the medical staff and physicians undermines his claims of deliberate indifference.") (citations omitted); *Amin v. County of Onandaga*, 2006 WL 1650764, at *8 (N.D.N.Y. June 13, 2006) (noting that plaintiff's non-compliance with medical advice and treatment provided an additional ground for dismissing his medical indifference claim). Further, Plaintiff's complaints of being "provided with over the counter medication" only, or x-rays of his back rather than an M.R.I.,[11] *see* Second Am. Compl. at pp. 13-14, amount to nothing more than mere disagreement over his treatment, which does not constitute a constitutional violation. *See O'Connor v. McArdle*, 2006 WL 436091, at *5 (N.D.N.Y. Feb. 22, 2006) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, that fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *see also Brown v. White*, 2010 WL 985184, at *7 (N.D.N.Y. Mar. 15, 2010) (Sharpe, D.J., adopting Rep. & Rec.) ("The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation."). Plaintiff provides no evidence that Defendants' prescribed treatment was inadequate, and we decline to find it so.

Thus, Plaintiff fails to raise an issue of material fact necessary to survive Defendants' Motion on his claim pursuant to *Bivens*, and thus we recommend **granting** summary judgment in favor of

---

[11] Contrary to Plaintiff's claim, the record before the Court clearly shows that Defendant Marini ordered, and Plaintiff did in fact receive, an MRI on his back, which was performed at FCI Ray Brook on April 30, 2008. *See* Marini Decl. at ¶¶ 15-16; Dkt. No. 53-5, Pl.'s Med. Records at p. 17.

the Defendants on this claim.

### C. Plaintiff's FTCA Claim

Plaintiff raises a claim under the FTCA, 28 U.S.C. §§ 1346 and 2671 *et seq.*, with respect to the alleged negligent dispensing of medication to him on April 3, 2008. Adopted by Congress in 1946, the FTCA gives federal district courts jurisdiction over civil actions against the United States for money damages over loss of property, personal injury, or death caused "by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1). The Government can be held liable if "a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* Although the FTCA constitutes a government waiver of the defense of sovereign immunity in certain circumstances, it does not itself create any causes of action. *See Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996). As such, a valid claim under the FTCA must be based on the applicable state law where the act or omission occurred. 28 U.S.C. §§ 1346(b) & 2674; *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). Because the alleged act giving rise to Plaintiff's negligence claim occurred at FCI Ray Brook, which is located in New York, we must apply New York law. *Mortise v. United States*, 102 F.3d at 696.

"Under New York law . . . a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (internal quotation marks and citations omitted).

By statute, the Federal Bureau of Prisons ("BOP") has the duty to "provide suitable quarters and provide for the safekeeping, care, and subsistence" of all inmates in its custody. 18 U.S.C. §

*-12-*

4042(a)(2); *see also United States v. Muniz*, 374 U.S. 150, 164-65 (1963) (stating that the BOP's duty of care is fixed by 18 U.S.C. § 4042, "independent of [any] inconsistent state rule"). The aforementioned statute creates a duty on the part of the BOP and the United States to "exercise ordinary diligence or reasonable care to keep prisoners safe and free from harm." *Smith v. United States*, 207 F. Supp. 2d 209, 214 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). Thus, the first element of Plaintiff's negligence claim has been established.

Proceeding to the second element, breach of duty, Plaintiff avers that on April 3, 2008, he was "given the wrong medication at pill line." Second Am. Compl. at p. 15. Plaintiff was brought to the medical office, where physician assistant Defendant Liberty saw him and reported that he was apparently suffering from an anxiety or panic attack and appeared agitated, was unwilling to lay down, and was "continually putting water over his head." Defs.' Statement at ¶ 9. We find Plaintiff's claim that Defendants breached their duty by giving him incorrect medication is wholly conclusory. Plaintiff has failed to provide any detail or evidence whatsoever that he was given the wrong medication. Additionally, he contradicts his own claim by also stating that his reaction was caused by medicine actually prescribed to him by Defendant Marini – amitryptline, prednisone,[12] and indomethacin – as opposed to negligent distribution of medication at the pill line. Pl.'s Opp. at p. 5. Furthermore, the evidence before the Court indicates that Plaintiff suffered a panic or anxiety attack, and not a heart attack, as he claims, and that "[a] panic attack typically has no physical cause, and as noted [by a treating physician] in her report, no physical cause has been found for this panic attack." *See* Defs.' Statement at ¶¶ 9-11; Marini Decl. at ¶¶ 14 & 33. There is no evidence to support the conclusion Plaintiff espouses: that he suffered an adverse reaction from

---

[12] Prednisone is a steroid similar to cortisone that is used as an antiallergeic, immunosuppressive, and anti-inflammatory agent. *See* AMERICAN HERITAGE MEDICAL DICTIONARY 660 (rev. ed. 2007);

*-13-*

Defendants' negligent distribution of incorrect medication to him. Thus, Plaintiff's FTCA claim is without support in the record, and accordingly, it is recommended that this claim be **dismissed**.

### D. Plaintiff's Motions Requesting a Medical Exam, Release of Medical Records, and Appointment of Counsel

Plaintiff also makes Motions before this Court requesting the release of medical records (Dkt. No. 69), a medical exam (Dkt. No. 71), and the appointment of counsel (Dkt. No. 76). As we recommend the entirety of Plaintiff's action be dismissed, these corresponding requests are thus moot.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 53) be **GRANTED** and Plaintiff's Second Amended Complaint (Dkt. No. 11) be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  September 14, 2011
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge